UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81609-CIV-MARRA/JOHNSON

CHRIS TURNER, individually and as personal
representative of the Estate of Tracy Turner,

    Plaintiff,

vs.

RAMO, LLC, a Florida limited liability company,

    Defendant.
_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment. (DE 41) and Defendant's Motion for Leave to File Affidavit of Charmaine Webster-Hauser in Support of Motion for Summary Judgment (DE 88). The motions are fully briefed and ripe for review. The Court has carefully considered the briefing and is otherwise fully advised in the premises.

**I.**    **Background**

The material facts, culled from affidavits, exhibits, depositions, and reasonably inferred therefrom in the light most favorable for the Plaintiff, are as follows:

This case arises from a fatal airplane crash in or around Puerto Rico on December 3, 2008. Plaintiff Chris Turner is the brother and personal representative of the estate of Tracy Turner. Ms. Turner was killed in the December 3, 2008 plane crash.

1

Defendant Ramo, LLC is a Florida-based company that loaned funds to Websta Aviation ("Websta"), the owner and operator of the plane that crashed on December 3, 2008, to purchase certain aircraft. In 2005, Websta entered into an agreement with Defendant, where Defendant loaned Websta $4.25 million to purchase five Israel Industries Westwind jets (the "aircraft"). Websta was to use these aircraft to launch a charter-flight service based in the U.S. Virgin Islands. In consideration for these loans, Defendant was to receive 2/3rds of Websta's net profits and reduced rates for chartered flights aboard the aircraft. As collateral for the loans, Defendant received security interests in the aircraft.

On December 3, 2008, Tracy Turner and Kent Clapp, vacationing in the British Virgin Islands, chartered a flight with Websta, aboard a twin-engine Rockwell International 690B, from the British Virgin Islands to San Juan, Puerto Rico. Websta's President, Ken Webster, piloted the airplane. While in the approach phase of the flight, the plane crashed approximately fifty miles from the airport in San Juan, killing the pilot and both passengers.

After the crash, all of Websta's business operations ceased. Shortly thereafter, Defendant called in its loans as immediately due. On December 19, 2008, Websta transferred to Defendant ownership of the five aircraft—Websta's entire remaining fleet—in exchange for discharge of Websta's entire outstanding debt.

At some point after the December 3, 2008 accident, Chris Turner, as the personal representative of the estate of Tracy Turner, filed a wrongful-death action against Websta and Defendant.[1] On October 30, 2009, Plaintiff initiated this lawsuit, asserting two claims for

---

[1] The pleadings and briefing do not specify when or where Plaintiff filed this related action, other than noting that the action is currently pending in Ohio and that related lawsuits have since been filed in federal and state courts in Florida.

2

fraudulent transfer under the Florida Uniform Fraudulent Transfer Act ("FUFTA"). Count I alleges that the aircraft transfer was fraudulent against present creditors under Florida Statute § 726.106(1), and Count II alleges that the aircraft transfer was fraudulent against present and future creditors under Florida Statute § 726.105(1)(a). Plaintiff thus seeks to void the aircraft transfer from Websta to Defendant as fraudulent so that the assets are available to satisfy a judgment in Plaintiff's pending wrongful-death claims against Websta. Defendant now moves for summary judgment as to both counts.

**II.     Summary Judgment Standard**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must show the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

**III.**     **Discussion**

    A.     Florida Statute § 726.106(1)

Section 726.106(1) of the FUFTA Act provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claims arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor become insolvent as a result of the transfer or obligation.

Defendant first argues that Section 726.106(1) is inapplicable because "no liability has attached to Websta's Aviation with regards to Turner's alleged present or future claims," and therefore Websta cannot be a "debtor" under the FUFTA. *See* Fla. Stat. § 726.102(6) (defining "debtor" as "a person who is liable on a claim."). While Defendant does not explain how or when liability would "attach," nor cite any case law for its argument, Defendant's argument appears to suppose that one cannot become a "debtor" under the FUFTA until the underlying "claim" is resolved against that debtor (e.g., via court order or settlement). Such a reading is inconsistent with the plain language of the FUFTA, which defines "claim" broadly. *See* Fla. Stat. § 726.102(6) ("'Debtor' means a person who is liable on a *claim*.") (emphasis added); § 726.102(3) ("'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."); *see also Steinberg v. Barclay's Nominees (Branches) Ltd.*, No. 04-60897, 2008 WL 4601042, at *11 (S.D. Fla. Sept. 30, 2008) (holding that under the FUFTA "[t]he term 'claim' is interpreted broadly and means a right to payment, whether or not it is reduced to judgment"); *Cook v. Pompano Shopper, Inc.*, 582 So. 2d 37, 40 (Fla. 4th DCA 1991) (explaining that a "tort claimant may maintain [an] action for fraudulent conveyance prior to obtaining judgment on [the] underlying tort.") (internal quotation marks omitted). Thus, under the FUFTA, the fact that Plaintiff's underlying wrongful-death claim is still pending does not preclude this contemporaneous fraudulent-conveyance action.

Defendant next argues that Section 726.106(1) is inapplicable because Websta received "reasonably equivalent value" for the aircraft transfer. Defendant claims that at the time of the transfer Websta owed it $4,250.000.00 for the aircraft loans. (Decl. of W. Mosler ¶¶ 28-29, Ex.

5

B, attached to DE 41; Decl. of A. Simon ¶¶ 28-29, Ex. C, attached to DE 41.)  Defendant further contends that at the time of transfer the combined value of the five aircraft was $3,750,000.00. (Decl. of W. Mosler ¶¶ 28-29, Ex. B, attached to DE 41; Decl. of A. Simon ¶¶ 28-29, Ex. C, attached to DE 41.)  Thus, Defendant argues, because the combined value of the aircraft no longer exceeded Websta's debt, Websta received reasonably equivalent value when it exchanged the five aircraft for discharge of its entire debt.

     Plaintiff disputes the validity of the loans between Websta and Defendant, arguing that the transactions were not bona fide loans.  Plaintiff contends that Warren Mosler, President of Defendant Ramo, organized Ramo solely for establishing a charter-flight service through Websta, and that Defendant and Mosler exercised complete control over Websta's operations and assets.  Plaintiff further argues that Websta never repaid any of Defendant's purported loans and in fact the two entities never intended for Websta to pay Defendant anything.  Rather, Plaintiff argues, Defendant simply purchased the aircraft for itself, but put title in Websta's name—Websta simply maintained the aircraft for Defendant and Mosler's own use.  Accordingly, Plaintiff concludes that any discharge of Websta's "debt" was valueless and therefore Websta did not receive adequate value in exchange for the aircraft transfer.

     In support of this argument, Plaintiff points to Mosler's deposition testimony, which states, for example, that launching Websta as a charter service was Mosler's idea (Dep. of W. Mosler at 7-8, Ex. A., attached to DE 58); Mosler made all decisions regarding Websta's aircraft, including selecting the type of aircraft and negotiating their purchase price (*id*. at 13-14, Ex. E); Defendant and Mosler did not require any financial information from Websta before making the purported loans (*id.* at 20, Ex. Q); Websta never generated any revenue (*id.* at 52-53, Ex. R);

Defendant paid for all expenses associated with operating the aircraft, including fuel, maintenance, refurbishment, hangaring fees, and insurance premiums (*id.* at 17-18, Ex G; 26-27, Ex. H; 34, Ex. I; 36, Ex. J; 52-53, Ex. R); Websta never repaid any of Defendant's purported loans (*id.* at 21, Ex. P); the aircraft were used exclusively to fly associates and friends of Defendant and Mosler (*id.* at 35-36, Ex F); and Defendant and Mosler exercised complete control over the day-to-day use of the aircraft (*id.*).

Given this evidence of Defendant's complete control and exclusive use of the aircraft, and Websta's inability to afford the aircraft or their maintenance, one could reasonably infer that the parties never intended for Websta to pay for the aircraft (i.e., repay the purported loans). Accordingly, Plaintiff has established a genuine issue of fact regarding the value Websta received for the aircraft transfer, and Defendant is therefore not entitled to summary judgment under the "reasonably equivalent value" prong of Section 726.106(1).

Defendant next argues that Section 726.106(1) is inapplicable because "the transfer did not leave Websta's Aviation insolvent, the second requirement under Fla. Stat. § 726.106(1)." Def.'s Mot. at 13. This argument misreads Section 726.106(1), which provides alternative criteria to establish insolvency, either one of which is sufficient to meet Section 726.106(1)'s insolvency requirement. *See* Fla. Stat. § 726.106(1) ("the debtor was insolvent at that time *or* the debtor became insolvent as a result of the transfer or obligation") (emphasis added). By ignoring the first part of the statute's insolvency requirement—insolvency at the time of transfer—Defendant has not discharged its burden of demonstrating the absence of a genuine issue of material fact regarding Websta's solvency under Section 726.106(1).

7

Moreover, the affidavits cited in support of this argument do not establish a disputed issue of material fact. Defendant relies on three identical affidavit statements regarding Websta's solvency, all stating: "Websta's Aviation did not become insolvent as a result of the transfer." (Decl. of W. Mosler ¶ 44, Ex. B, attached to DE 41; Decl. of A. Simon ¶ 44, Ex. C, attached to DE 41; Decl. of C. Webster-Hauser ¶ 15, Ex. 1, attached to DE 89).[2] These are conclusory statements, unsupported by any factual support, and therefore have no probative value. *See, e.g.*, *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (internal quotation marks omitted); *Ojeda v. Louisville Ladder Inc.*, 2010 WL 5065253, at *2 (11th Cir. Dec. 13, 2010) (holding that "conclusory statements do not establish a disputed issue of material fact").

Last, Defendant argues that "assuming *arguendo* Websta's was insolvent, under Florida law, even an insolvent debtor may make a valid conveyance of property to a creditor for the purpose of either securing or discharging a pre-existing debt." Def.'s Mot. at 14. As discussed above, there is a genuine issue of material fact regarding the value of Websta's purportedly discharged debt. Consequently, there is also a factual issue regarding whether the asset transfer

---

[2] On February 1, 2011, Defendant filed a Motion for Leave to File Affidavit of Charmaine Webster-Hauser in Support of Motion for Summary Judgment. (DE 88). This affidavit does not contain any statements different from those made in the Mosler and Simon declarations. Because the affidavit does not add any relevant evidence, considering it here will not change the Court's analyses or conclusions and will not prejudice Plaintiff. Accordingly, the Court will grant Defendant's motion for leave and will consider the Webster-Hauser affidavit.

was a "valid conveyance" that "discharg[ed] a pre-existing debt." Defendant's argument thus fails at the summary-judgment stage.[3]

     B.     Section 726.105(1)(a)

Section 726.105(1)(a) of the FUFTA provides in relevant part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor." Section 726.105(2) provides a list of factors, commonly referred to as "badges" of fraud, that courts may use to determine whether a debtor acted with actual intent to defraud. "While a single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance, . . . several of them when considered together may afford a basis to infer fraud." *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498 (11th Cir. 1997) (citing *Johnson v. Dowell*, 592 So. 2d 1194, 1197 (Fla. 2d DCA 1992)).

Defendant argues that "when consideration [is] given to these enumerated badges, it is clear that the requisite intent to defraud . . . was not present." Def.'s Mot. at 16. The Court disagrees. A nonexclusive list of statutory factors, which the Court finds relevant here, includes:

---

[3] Because there are genuine issues regarding the validity of Defendant's loans to Websta, Defendant's argument that "the aircraft at issue do not qualify as 'assets'" under Section 726.102(2), Def.'s Mot. at 11, also fails. Defendant's argument is premised upon the validity of liens purportedly encumbering these aircraft. *See* Fla. Stat. § 726.102(2)(a) (removing property "encumbered by a valid lien" from the definition of "asset"). Because the validity of the loans is in dispute, the validity of the liens is likewise disputed.

Defendant's argument that the transfer is not fraudulent because under "Article 9 of the Uniform Commercial Code, a secured party has the option to accept the collateral in full or partial satisfaction of the obligation is secures," Def.'s Mot. at 11-12, fails for similar reasons. Because the value of the loans are disputed, there is also a question of fact regarding whether any "obligation" was "satisf[ied]" by the asset transfer.

9

(1) whether the transfer was to an insider, (2) whether the debtor was insolvent or became insolvent shortly after the transfer, and (3) whether the transfer was of substantially all the debtor's assets. *See* Fla. Stat. § 726.105(2). Under each of these factors, there is either a genuine issue of material fact or Defendant has failed to demonstrate the absence of a genuine issue of fact.

First, there is a genuine issue as to whether Websta and Defendant were "insiders." Under Section 726.102, an insider is "a person in control of the debtor," Fla. Stat. § 726.102(7)(b)(6), or one who "controls substantially all of the debtor's assets," Fla. Stat. § 726.102(1)(d) & (7)(d). There is scant case law interpreting Section 726.102's "control" requirements for "insiders," and the parties cite no authority supporting their arguments on this point aside from the statutory language of Section 726.102 itself. However, given Plaintiff's evidence of Defendant's complete financial and decision-making control over Websta and its assets (*supra*, Section III.A), it is possible that Plaintiff could prove an insider relationship between Websta and Defendant. *Cf. In re Optical Tech., Inc.*, 252 B.R. 531, 539 (M.D. Fla. 2000) ("When determining whether control is exerted over a company," in the bankruptcy context, "the Court must focus on whether a defendant had an opportunity to exert more control over the corporate affairs than other creditors are given. However, to be determined a person in control, the person must hold the ability to control the company so as to dictate corporate policy and disposition of corporate assets without limits.") (citations omitted); *Amjad Munim, M.D. v. Azar*, 648 So. 2d 145, 152 (Fla. 4th DCA 1994) ("[F]raud will be presumed when the transfer occurs between two corporations controlled by the same individuals.").

Defendant's reply memorandum argues that Plaintiff's insider argument fails because the record shows that Defendant never controlled Websta. Def.'s Reply at 6. The Court first notes that the affidavits upon which Defendant relies are entirely conclusory on this point[4] and therefore have no probative value. *See Leigh*, 212 F.3d at 1217; *Ojeda*, 2010 WL 5065253, at *2. Additionally, even accepting Defendant's affidavits, there is at least a dispute as to whether Defendant controlled Websta's assets such that the two entities were insiders.

Second, as discussed *supra* Section III.A, Defendant has not discharged its burden of demonstrating the absence of a genuine issue of material fact as to whether Websta was insolvent at the time of transfer.

Third, Defendant has failed to carry its burden of demonstrating the absence of a genuine issue of material fact as to whether the asset transfer involved "substantially all of the debtor's assets." Defendant argues that the transfer did not include "all of Websta's Aviation's assets," but instead only involved the five aircraft over which Defendant possessed liens. Def.'s Mot. at 17. According to the record and briefing, however, these five aircraft were Websta's primary, if not entire, assets. Given that Websta, a purported charter-flight service, transferred the entirety of its aircraft fleet, the Court finds that there is, at the very least, a question of fact as to whether Websta transferred "substantially all" of its assets.[5]

---

[4] *See* Decl. of W. Mosler ¶ 18, Ex. B, attached to DE 41 ("At no time did RAMO control Websta's Aviation's day to day operations or business or control any of Websta's assets."); Decl. of A. Simon ¶ 18, Ex. C, attached to DE 41 (same); Decl. of C. Webster-Hauser ¶ 5, Ex. 1, attached to DE 89 ("At no time did RAMO control Websta's Aviation's day to day business operations.").

[5] Defendant's reply memorandum argues that Websta "possessed an insurance policy" and "maintained" a hangar, and therefore the five transferred aircraft did not constitute "substantially all" of Websta's assets. Def.'s Reply at 17-18. Defendant offers no admissible

11

Finally, Defendant argues that even if Websta possessed the requisite fraudulent intent, the transfer is not voidable against it because it accepted the transfer in good faith and for reasonably equivalent value. Defendant relies on the transferee defense set forth in Section 726.109(1), which provides: "A transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value . . . ." Thus, so long as the transferee meets the two criteria of Section 726.109(1), a transfer is not fraudulent under Section 726.105(1)(a) as to the transferee, notwithstanding the various badges of fraud. *See, e.g.*, *Miles v. Katz*, 405 So. 2d 750, 752 (Fla. 4th DCA 1981) ("A debtor's preferential transfer of property to a creditor cannot be declared fraudulent as to other creditors, although the debtor in making it intended to defeat their claims, and the preferred creditor had knowledge of such intention if the preferred creditor did not actually participate in the debtor's fraudulent purposes . . . . And this is so, although the preferred creditor knows that the debtor is insolvent, that the transfer is of all of the debtor's property, that there are other creditors, that the debtor is actuated solely by the desire to defraud his own creditors, and that the effect of the debtor's action will be to defeat them.").

Section 726.109(1) is not satisfied here, however. As discussed above, there is a genuine issue of material fact regarding the value of the discharged debt that Defendant exchanged for the

---

evidence for this contention, relying instead on statements from other pleadings and a hearsay invoice from Websta charging Defendant for "hangaring fees." *See, e.g.*, *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (holding that inadmissible hearsay documents may not be considered on a motion for summary judgment). But even considering these other assets, Defendant has offered no estimation of their value such that Websta's ownership of these assets could render Websta's entire aircraft fleet an insubstantial portion of its assets.

assets.  Thus, Defendant cannot meet Section 726.109(1)'s "reasonably equivalent value" requirement.

If proven, the badges of fraud discussed herein could afford a basis to infer fraudulent intent.  Accordingly, based on genuine issues regarding these factors, the Court finds that summary judgment is not appropriate under Section 726.105(1)(a).

## IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 41) is **DENIED**.  Defendant's Motion for Leave to File Affidavit of Charmaine Webster-Hauser in Support of Motion for Summary Judgment (DE 88) is **GRANTED**.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 7th day February, 2011.

_____
KENNETH A. MARRA
United States District Judge

Copies to:
Counsel of record